No. 40,913

FRED MINEAR, Surviving Spouse and Next of Kin of Billie Minear, Deceased, *Appellant,* v. ROBERT E. ENGEL, *Appellee.*

(337 P. 2d 693)

Opinion filed April 11, 1959.

*Clarence N. Holeman,* of Wichita, argued the cause and was on the briefs for the appellant.

*Gerald Sawatzky,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin,* and *Richard C. Harris,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This action was based on the theory that defendant's negligence was the proximate cause of the wrongful death of Billie Minear. It was brought by her husband as her surviving spouse and next of kin in behalf of himself and their minor children. The appeal is from the verdict of the jury and the judgment of the trial court in favor of defendant.

Plaintiff testified that on August 25, 1956, Billie Minear, then twenty-nine years of age, was a passenger in a car owned and operated by Helen Winningham, a tenant of plaintiff and Billie. The women left in Helen's car at about 7:30 p. m. and at that time neither one of them had been drinking. He had never seen Helen intoxicated. Plaintiff then undertook to testify that on the same day that the accident occurred he had gone to the scene and had driven south on highway K-15 at forty-five miles per hour. The shoulder on the west side of the highway was six feet wide with a gentle slope for about ten feet before it went to the bottom of the ditch into which plaintiff drove several times without excessive jolting. He had seen a mail box at the west edge of the roadway and west of the point of the collision. As a result of the trial court's sustaining an objection to plaintiff's experiments in driving at the scene because they were made in the daytime, plaintiff made a proffer of his attempted testimony, wherein it was added that he could, and had, parked his automobile on the shoulder without going into the ditch.

Both Billie and Helen died as a result of the collision hereinafter described.

Plaintiff then called defendant as his witness and defendant's accident report was introduced into the evidence. It reads:

"I was driving south on K-15 Hiway at approximately forty miles per hour; noticed car coming at high rate of speed and when car was approximately 150 to 200 yards in front of me it swerved over into my lane. I hit the brake and braced for impact. After collision the doors couldn't be opened so I crawled out window. Was given first aid and taken to St. Joseph hospital."

The above report was made two days after the accident when defendant was released from the hospital. In his testimony defendant estimated the speed of Helen's car at sixty-five to eighty miles per hour. He applied his brakes as soon as Helen's car came into his lane. His car skidded and he did not have time to turn right or do anything to avoid the collision. Her car was coming too fast when it crossed into his lane. The collision occurred just north of Forty-Fifth Street South on K-15 highway in his lane of traffic. His car made fifty-five or sixty-five feet of skid marks.

Defendant interposed a demurrer to plaintiff's evidence for the reason that it failed to show sufficient facts to constitute a cause of action and it affirmatively showed contributory negligence as a matter of law. After argument of counsel the trial court overruled the demurrer.

Defendant's evidence showed the smooth and clean blacktop traveled portion of K-15 was twenty-two feet and two inches wide from the west side. Helen's car made no apparent skid marks while defendant's car made forty-five feet of skid marks to the point of impact. There was a forty-five mile per hour speed limit at that point. A mail box was located near the west edge of the pavement directly across from the point of impact. Wayne Bennett, a deputy sheriff, was present when a mortician took blood from Helen for an alcohol test. Alcohol odor was strong in Helen's car but there was no alcohol odor on defendant or his passenger. Odor of alcohol was strong on Billie prior to her death and on Helen while she still had a faint pulse. After the blood sample was taken from Helen at the mortuary, it was placed in a special tube container, capped at the time, stamped, and mailed to Lattimore-Fink Laboratories in Topeka. The sample remained in possession of Mr. Bennett from the time of taking until mailing prior to 7:00 a. m. the same morning of the accident. At approximately 11:45 or 12:00 in the evening of August 24, 1956, Helen and Billie were seen sitting at a bar in a tavern. They had two beer glasses set out in front of them. The tavern was about three-quarters of a mile south of the scene of the collision.

Defendant's passenger, who later became his wife, testified that he hollered, "They are going to hit us." He grabbed her and the collision occurred. She was taken to the hospital with one of the other ladies and on the way the witness smelled alcohol on the lady—the strongest she had ever smelled—which caused her to get sick. The lady died en route to the hospital.

Strenuous objection was made to the introduction of the deposi-

tion of Doctor A. A. Fink, a well-qualified pathologist, who tested the blood sample of Helen, but the trial court admitted the deposition. It showed that the sample of blood was received through first class mail from the Sedgwick county sheriff's office; that Doctor Fink tested it for blood alcohol and a level of 0.302 per cent was revealed; a person whose blood tests a level of 0.15 is under the influence of alcohol; when the level of 0.2 or 0.25 is reached, he slurs his speech and cannot walk a chalkline; he will stagger and will have a little difficulty controlling his hands and feet; at 0.25 to 0.35 he will be in varying degrees of severe dysarthria; he will have marked blurring of his speech, marked mental depression; and arrest and physical and mental disorientation; at around 0.35 he will usually pass out and become unconscious; Helen's showing of 0.302 fell into the category of blurring and marked mental depression, staggering, and in lay terminology, she was inebriated or drunk.

Plaintiff states no authority or permission was ever obtained to take Helen's blood which was the main point of the objection to the admission of the deposition of Doctor Fink.

Plaintiff moved for a directed verdict in his favor and requested an instruction to the effect that the only thing the jury need consider was the amount of damages, which motion the trial court overruled.

After the jury returned its verdict for defendant and made answers to special questions, plaintiff filed a motion for new trial. The trial court overruled this motion and entered judgment for defendant based on the verdict and answers to special questions which included the following question and answer:

"4. Was defendant guilty of negligence which was a proximate cause of the collision and death of Billie Minear? A. No."

Objections were made by plaintiff to other special questions and the answers thereto but none was made to the question and answer above quoted, which was the only finding pertaining to the negligence of defendant or as to whether such alleged negligence was the proximate cause of Billie's death.

Many contentions of error on the part of the trial court are made by plaintiff, and both parties ably argue them in their briefs but in view of special question No. 4, and the jury's answer thereto, the defendant was exonerated from any negligence and this compelled the verdict to be returned in defendant's favor.

From the record submitted to us on appeal, the pertinent portions of which are above set out, we are unable to find any evidence to

support a finding of negligence on the part of defendant and the jury apparently was confronted with the same problem in view of its answer to special question No. 4. The situation was this. Defendant was proceeding at the legal speed of forty-five miles per hour and saw an oncoming vehicle traveling at an excessive speed of sixty-five to eighty miles per hour. Defendant had the right to assume that Helen would obey the law and continue on her own side of the road and not come over into his lane as she did. (*Winfough v. Tri-State Insurance Co.,* 179 Kan. 525, 297 P. 2d 159.) In *Meng v. Penner,* 179 Kan. 789, 298 P. 2d 246, involving a similar accident, it was stated that the emergency doctrine cannot be invoked in favor of a plaintiff when he is negligently driving down the wrong side of the road. On the contrary, the doctrine would be more properly invoked in favor of his adversary. On the record here, it can likewise be said that a more formidable problem would have been presented for judicial solution and determination had the parties been reversed. We conclude that the jury was correct in finding no negligence on defendant's part. This is in harmony with our many decisions in similar cases. We will not extend the opinion by treating other contentions of error raised by plaintiff but will disregard them in accordance with the provisions of G. S. 1949, 60-3317, which reads in part as follows:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court. . . ."

We are convinced substantial justice has been done and, in addition, plaintiff did not, nor could he, affirmatively show such alleged errors prejudicially affected his substantial rights.

Affirmed.