**Elba ROBLES–VAZQUEZ, et al., Plaintiffs, Appellants,**

v.

**Raul Tirado GARCIA, et al., Defendants, Appellees.**

No. 95–1375.

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1996.

Decided April 10, 1997.

Guy L. Heinemann, New York City, with whom Edelmiro Salas Garcia, San Juan, PR, was on brief, for Plaintiffs, Appellants.

Sylvia Roger–Stefani, Assistant Solicitor General, with whom Carlos Lugo–Fiol, Solicitor General, San Juan, PR, and Edda Serrano–Blasini, Deputy Assistant Solicitor, Department of Justice, Guaynabo, PR, were on brief, for Defendants, Appellees.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and DiCLERICO,* District Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Plaintiffs-appellants appeal from an order of the district court vacating an earlier $2.25 million judgment following a jury verdict in plaintiffs-appellants' favor on their individual claims under 42 U.S.C. § 1983 and the Puerto Rico Constitution. At issue is the power of the district court to grant judgment as a matter of law after a jury's verdict on a ground never raised by the parties prior to submission of the case to the jury. We reverse.

## I.

We state the facts in the light most favorable to the verdict. *See Aetna Casualty Surety Co. v. P & B Autobody,* 43 F.3d 1546, 1552 (1st Cir.1994).

On the night of August 26, 1991, defendants-appellees Raul Tirado Garcia and Julio Olivares Febles, assistant marshals of the Superior Court of Puerto Rico, arrested Meraldo Braña Cruz at his home for nonpayment of child support pursuant to a valid arrest warrant. Braña had no criminal record, and the marshals did not consider him dangerous; they did not handcuff or frisk him before placing him in the back seat of the patrol car.

During the drive, Braña asked if they could stop by a phone so he could call a relative to arrange for payment of his child support arrearage. The police officers agreed, but Braña took advantage of the opportunity to make his escape. During the subsequent pursuit on foot, Tirado fired several shots at Braña, one of which hit him in the back of his leg.

When Tirado caught up with Braña, he shot him in the back at close range. Braña collapsed, and the marshals brought him to the hospital. Despite extensive surgery, Braña continued to endure excruciating pain, post-traumatic stress syndrome, chronic depression, stomach problems, a swollen leg, back pain, and a limp. He died on December 24, 1992 of cardiac arrhythmia, caused by the prescription drugs he had been taking for the pain.

Braña sued, among others, Tirado and the Commonwealth of Puerto Rico under 42 U.S.C. § 1983,[1] alleging that Tirado had used excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution[2] and Article II, §§ 7 and 10 of the Puerto Rico Constitution.[3] After Braña's death, his common-law wife, Elba Robles–Vasquez, and his six children prosecuted Braña's surviving claims as his heirs. His wife and the children also sought recovery individually for their own pain and suffering, emotional distress, and other damages, relying on similar provisions of the United States and Puerto Rico Constitutions.

At the close of the plaintiffs' case, the defendants moved for judgment as a matter of law under Fed.R.Civ.P. 50(a). This motion did not include as a reason for dismissal of the wife's and children's individual claims that Tirado's actions had in no way been directed at the relationship between Braña

---

\* Of the District of New Hampshire, sitting by designation.

1. 42 U.S.C. § 1983 states, in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...."

2. The Fourth Amendment to the United States Constitution states, in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."

The Fourteenth Amendment states, in relevant part, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law...."

3. Article II, § 7 of the Puerto Rico Constitution states, in relevant part, "No person shall be deprived of his liberty or property without due process of law."

Article II, § 10 of the Puerto Rico Constitution states, in relevant part, "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated."

and his wife and children.[4] The court denied the motion.

The jury found in Braña's favor in his own, surviving action, awarding to his heirs, on Braña's behalf, one million dollars in compensatory damages and $500,000 in punitive damages. The jury also awarded to Robles and the children, in the claims brought on their individual behalfs, $250,000 each in compensatory damages and $500,000 in punitive damages to the group as a whole.

The court remitted the punitive damages from Braña's own claims to $250,000. No appeal has been brought from the judgment entered upon Braña's claims.

The court, however, granted part of the defendants' Rule 50(b) Motion for Renewal of the Motion For Judgment as a Matter of Law and dismissed the wife's and children's individual claims under § 1983, holding that Tirado's conduct was not aimed at interfering with Braña's relationship with his family as required by First Circuit case law. *See infra* note 6. In a footnote, the court also dismissed plaintiffs-appellants' similar claims under the Puerto Rico Constitution, saying they were "of the same ilk" as the federal constitutional claims. As a result, the district court dismissed so much of the jury's award as granted an additional $1,750,000 in compensatory damages, and $500,000 in punitive damages, to the wife and children in their individual rights. The plaintiffs appeal from the court's granting of the part of the Rule 50(b) motion.

## II.

■ Plaintiffs-appellants' primary argument on appeal is that defendants-appellees waived the contention that, as Tirado's alleged unconstitutional action against Braña was not aimed at the latter's relationship with his family, the plaintiff family members could not recover their individual damages

resulting from Braña's injury and death. *See infra* note 6. The defendants did not raise this point of law in any pre-trial motion, nor did they raise it in the Rule 50(a) motion filed at trial. Also, the defendants did not object to the court's jury instructions which authorized the jury to award damages to the individual family members and made no mention before the jury retired of any legal limitation of this nature.

The first reference to the issue surfaced in a rather weak suggestion of the point in defendants-appellees' postverdict renewed motion for judgment as a matter of law made under Fed.R.Civ.P. 50(b). However, "[a] post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion." Fed.R.Civ.P. 50(b) advisory committee's note to the 1991 amendment; *see also Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 723 (1st Cir.1994) (same). "The purpose of the Rule 50(b) requirement is to alert the opposing party to the movant's claim of insufficiency before the case goes to the jury, so that his opponent may possibly cure any deficiency in his case should the motion have merit, and also so that the judge may rule on the adequacy of the evidence without impinging on the jury's fact-finding province." *Martinez Moll v. Levitt & Sons of Puerto Rico, Inc.,* 583 F.2d 565, 569 (1st Cir.1978).

■ An appellate court may not ordinarily consider an issue raised for the first time in a Rule 50(b) motion on the merits. *See id.* at 568. "[T]he exceptions [to this rule] are few and far between, and appellate discretion should not be affirmatively exercised unless error is plain and the equities heavily preponderate in favor of correcting it." *Correa v. Hospital San Francisco,* 69 F.3d 1184, 1196 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996).[5]

---

4. First Circuit case law holds that surviving family members cannot recover in an action brought under § 1983 for deprivation of rights secured by the federal constitution *for their own damages* from the victim's death unless the unconstitutional action was aimed at the familial relationship. *See, e.g., Manarite v. City of Springfield,* 957 F.2d 953, 960 (1st Cir.), *cert. denied,* 506 U.S. 837, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992). "State action that affects the parental relation-

ship only incidentally, however, even though the deprivation may be permanent, as in the case of unlawful killing by the police, is not sufficient to establish a violation of a [sic] identified liberty interest." *Pittsley v. Warish,* 927 F.2d 3, 8 (1st Cir.1991).

5. Similarly, a failure to object to jury instructions constitutes a waiver. Fed.R.Civ.P. 51 states, in relevant part, "No party may assign as error the

A district court has no more leeway than a court of appeals to consider an issue raised post-verdict for the first time in a Rule 50(b) motion. *See generally American and Foreign Insurance Company v. Bolt*, 106 F.3d 155, 159–60 (6th Cir.1997) ("While it is accepted that a judge may sua sponte grant a directed verdict pursuant to Fed.R.Civ.P. 50(a) ... allowing a judge to sua sponte raise a new issue postverdict, and proceed to overturn a jury verdict on that basis contravenes the dictates of Rule 50(b).") (citation omitted) (citing cases).

Here, one might consider it a close call whether the district court's prior failure, on its own initiative, to have barred plaintiffs' Fourteenth Amendment claims because of our "aimed at the relationship" requirement amounted to plain error, so as to allow the court to engage later in post-verdict correction.[6] But we need not decide that question, because clearly the district court's prior failure to have voluntarily barred plaintiffs' parallel claims under Article II, § 10 of the Puerto Rico Constitution was *not* plain error, if, in fact, it was error at all.

Stating that the elements of the two claims were identical, the court instructed the jury to award only one set of damages for the plaintiffs' individual claims both under the Fourteenth Amendment and the Puerto Rico Constitution.[7] It follows that even if the district court committed plain error in sending to the jury the plaintiffs' individual claims under the Fourteenth Amendment of the

United States Constitution, the fact that it did not commit plain error in allowing the Puerto Rican constitutional prong of the claims to go forward prevented it from later allowing defendants' Rule 50(b) motion to invalidate the jury's award of individual damages to plaintiffs.

In Puerto Rico, there is no precedent of which we are aware holding that family members of a deceased victim of lethal force used by the police in violation of Article II, § 10 of the Puerto Rico Constitution either have or do not have a private right of action for their own damages derived from the victim's injury and death. No Puerto Rico opinion, however, forecloses such an action, and decisions in other, related areas of Puerto Rico law indicate that the Puerto Rico Supreme Court might allow it.

The provisions of the Puerto Rico Constitution are said to operate *ex proprio vigore*, without the need for an effectuating statute comparable to § 1983. The Puerto Rico Supreme Court has written, "The fact that a law has not been enacted defining privacy rights does not relieve us from our duty to give effect to that provision, since it is known that all constitutional provisions are, by their own nature, of privileged norm under the legislation, self-exercisable." *Quinones v. Commonwealth*, 90 P.R.R. 791, 794 (1964).

More recently, the Court wrote:

We have repeatedly held that the character and primacy of the right of privacy

---

giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." *See also Putnam Resources v. Pateman*, 958 F.2d 448, 456 (1st Cir.1992) ("Silence after instructions ... typically constitutes a waiver of any objections."); *La Amiga del Pueblo, Inc. v. Robles*, 937 F.2d 689, 690–91 (1st Cir.1991) (holding that unobjected to jury instructions become the law of the case); *Quinones–Pacheco v. American Airlines, Inc.*, 979 F.2d 1, 4 n. 3 (1st Cir. 1992) (same).

**6.** While this Circuit has adopted an "aimed at the relationship" requirement, *see Soto v. Flores*, 103 F.3d 1056, 1062 (1st Cir.1997), some other circuits have not, *see, e.g., Kelson v. City of Springfield*, 767 F.2d 651, 653–55 (9th Cir.1985); *Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 509 n. 7 (3d Cir.1985); *Bell v. City of*

*Milwaukee*, 746 F.2d 1205, 1244–45 (7th Cir. 1984), and the Supreme Court has not yet ruled on this issue.

**7.** The district court instructed the jury, "The plaintiffs' claims under the Puerto Rico Constitution essentially mirror and are the same as those asserted under the United States Constitution." The court further stated:

Since the elements of this claim [under Article II, § 10 of the Puerto Rico Constitution] are the same as under the Federal Constitution, I will not repeat them here. The verdict form that will be provided to you after I finish my instructions will reflect the claims under both the Federal and Puerto Rico Constitutions. If you find liability under both constitutions, or either of them, the amount of damages you award will only be provided to the plaintiff once, not double. That is, no double recovery may be granted by you.

operate *ex proprio vigore*, and may be enforced even between private individuals. We must reach the same conclusion with regard to the constitutional right which protects the inviolability of the dignity of the human being, and with regard to that right which protects every worker against risks to his personal integrity in his work.

We have also recognized the right to be compensated for damages caused when a private citizen encroaches upon one of these rights.

*Arroyo v. Rattan Specialties*, 17 O.T.S. 43, 74–75 (1986) (citations omitted).

Under this rationale, the Puerto Rico Supreme Court held that the victim of an illegal search had a private right of action for damages under the Organic Act of Puerto Rico, even before the Puerto Rico Constitution had come into existence. *See Miguel v. Hernaiz Targa & Co.*, 51 P.R.R. 568, 574–75 (1937). More recently, the Court has recognized a private right of action for violations of Article II, § 10's ban on wiretapping, *see Puerto Rico Telephone Co. v. Martinez*, 14 O.T.S. 420, 435 (1983); *see also Menda Biton v. Menda*, 796 F.Supp. 631, 633 (D.P.R.1992), and for violations of Article II, § 8's right to protection against abusive attacks against one's reputation or family life, *see Ayala v. San Juan Racing Corp.*, 12 O.T.S. 1012, 1019–20 (1982); *Colon v. Romero Barcelo*, 12 O.T.S. 718 (1982); *Gonzalez v. Cuerda*, 88 P.R.R. 121, 130 (1963); *see also Rivera–Flores v. Puerto Rico Telephone Co.*, 64 F.3d 742, 751 n. 9 (1st Cir.1995) (recognizing that Article II, §§ 1 and 8 operate *ex proprio vigore* to make violators liable for tort damages).

Recognition of a private right of action by or on behalf of the victim of a constitutional wrong does not, of course, necessarily mean that members of the victim's family may sue in their individual capacities for damages suffered as a result of the victim's death or injury. Puerto Rico tort law, however, allows the close relatives of the victim in unlawful death cases to recover for their own damages. *See Hernandez v. Fournier*, 80 P.R.R. 93, 96–104 (1957); *Caez v. U.S. Casualty Co.*, 80 P.R.R. 729, 734–36 (1958); *Rojas–Hernandez v. Puerto Rico Electric Power Authority*, 925 F.2d 492, 493 (1st Cir. 1991). As the Puerto Rico Supreme Court wrote, "Thus, our jurisprudence admits that the next of kin of the victim are entitled to compensation for the material and moral damages which they personally suffered, whether or not they are heirs of the deceased." *Hernandez*, 80 P.R.R. at 99.

The same could well be true in the realm of constitutional torts as well, although the Puerto Rico courts have yet to rule definitively. *See Colon* (allowing relatives of a murdered man to recover under, inter alia, Article II, § 8 of the Puerto Rico Constitution's guarantee of privacy, for the use of pictures of the deceased's corpse in political advertisements, without clarifying whether the recovery was for the breach of the deceased's privacy or the relatives').

The Supreme Court of Puerto Rico seems particularly likely to recognize a private right of action for victims' family members in the privacy arena. The Court has declared that the right of privacy set forth in sections 1, 8, and 10 of Article II of the Puerto Rico Constitution "has a privileged place in the wide range of rights protected by the Constitution." *Commonwealth v. Puerto Rico Telephone Co.*, 14 O.T.S. 505, 514 (1983); *see also Kerr–Selgas v. American Airlines, Inc.*, 69 F.3d 1205, 1213 (1st Cir.1995) (recognizing the "great importance" attached by the Puerto Rico Supreme Court to the Puerto Rico Constitution's guarantee of the right of privacy and human dignity).

Although the relevant language of Article II, § 10 of the Puerto Rico Constitution is identical to that of the Fourth Amendment to the United States Constitution, the Puerto Rico Supreme Court has declared that it may interpret a provision of the Puerto Rico Constitution as being more protective of the right involved than is the analogous provision of the United States Constitution. *See People v. Conde Pratts*, 15 O.T.S. 411, 416–17 (1984). Thus, the Puerto Rico Supreme Court could and might decide against adopting an "aimed at the relationship" test for the Puerto Rico Constitution even if the United States Supreme Court were to adopt one for the United States Constitution. The fact that the First Circuit has adopted such a test

under the United States Constitution is not determinative of the plaintiffs' rights under the Puerto Rico Constitution.

We conclude, therefore, that, in the absence of any Puerto Rico authority recognizing an "aimed at the relationship" requirement, and given Puerto Rico law's strong policy in favor of compensating the tort victim's relatives for their independent damages, it is at least questionable whether the Puerto Rico courts would read an "aimed at the relationship" requirement into private actions brought under Article II, § 10 of the Puerto Rico Constitution. It follows that it was not *plain* error for the district court to send the plaintiffs' individual claims under the Puerto Rico Constitution to the jury. This being so, the district court later committed error when, following the verdict, it allowed the defendants' Rule 50(b) motion and dismissed the jury's damages award, which rested separately on the Puerto Rico Constitution as well as, doubtfully, on the Fourteenth Amendment.

Had the defendants wished to preserve the "aimed at the relationship" issue, in particular under Puerto Rico law, for ruling by the district court and ourselves, they should have raised it when they moved for judgment as a matter of law during the trial under Rule 50(a) or, at least, by way of objection to the court's jury instruction submitting the individual plaintiffs' claims to the jury. This they completely failed to do.

■ Up until this point, we have assumed that the district court's power to engage in post-verdict correction was limited to instances of plain error—a very tough standard in civil cases. It could possibly be argued, however, that district and appellate courts possess some sort of additional authority to consider a waived issue on the merits if it presents an important and novel question of law. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (choosing to review a

waived issue de novo on its merits because the district court had done so, the court of appeals had not disagreed with the district court's conclusions, and the issue was a novel question of law that was important and likely to recur); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 107–08 (2d Cir.1988) (examining an issue on the merits despite a party's failure to object to a jury instruction because the district court had considered the question on the merits and because the issue involved was an important and novel question of federal law, citing *City of Newport* ), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989); *Weaver v. Bowers*, 657 F.2d 1356, 1361 (3d Cir.1981) (relying partly on *City of Newport* as authority to examine on the merits a defense of failure to state a claim upon which relief can be granted which was not raised until after the conclusion of the trial, stating that "in unusual circumstances the courts of appeals also have inherent power to reach issues although not timely raised below"), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).

The short answer to any contention that the district court was empowered to rule here by the above *City of Newport* principles is that the issue in question is one of Puerto Rico law on which the Puerto Rico Supreme Court, and not we or even the United States Supreme Court, has the final say.[8] As such, consideration of the issue on the merits would "neither ... promote the interests of justice nor ... advance efficient judicial administration." *City of Newport*, 453 U.S. at 257, 101 S.Ct. at 2755.

As we review the defendants' belated objection under the plain error standard and find no plain error, at least in respect to the Puerto Rico law claim, we reverse the district court's post-trial grant of judgment as a matter of law on the plaintiffs' individual damages claims.

---

8. A longer answer could be that whatever power the Supreme Court relied upon in *City of Newport* was limited to itself and would least likely apply to non-appellate tribunals, such as the district courts, even assuming it were to apply to courts of appeal, which remains doubtful, although we do not rule on the matter. As the

Court wrote, "While concluding that in this unusual case, the interest of justice warrants *our* plenary consideration, we express no view regarding the application of the plain-error doctrine by the Courts of Appeals." *City of Newport*, 453 U.S. at 257 n. 16, 101 S.Ct. at 2755 n. 16 (citation omitted) (emphasis added).

We note that because the district court granted judgment as a matter of law to the defendants on the plaintiffs' individual claims, it did not consider the defendants' request, included within their post-trial motion under Rules 50(b) and 59, for a remittitur and for a new trial on these claims. As we have restored the jury's verdict, we remand to the district court so that it may now consider these requests to the extent the parties wish to pursue them.

*Vacated and remanded.*