Julio E. **RUIZ TROCHE,**
et al., Plaintiffs,

v.

**PEPSI COLA OF PUERTO RICO BOTTLING COMPANY,** et
al., **Defendants.**

Jose D. **RIVERA CONCEPCION,**
et al., Plaintiffs,

v.

**PEPSI COLA OF PUERTO RICO BOTTLING COMPANY,** et
al., **Defendants.**

Manuela **VAZQUEZ ORTIZ,**
et al., Plaintiffs,

v.

**PEPSI COLA OF PUERTO RICO BOTTLING COMPANY,** et
al., **Defendants.**

Nos. **CIV. 93–2329 RLA, CIV. 93–2331 RLA, CIV. 93–2332 RLA.**

United States District Court,
D. Puerto Rico.

Nov. 26, 1997.

See also, 950 F.Supp. 1217.

Jorge Carazo Quetglas, Toledo, Toledo & Carlos-Quetglas, Hato Rey, PR, for Julio E. Ruiz Troche, et al.

Jose F. Quetglas Alvarez, Jose F. Quetglas Jordan, Eric M. Quetglas Jordan, San Juan, PR, for Jose D. Rivera Concepcion, et al. and Manuela Vazquez Ortiz, et al.

Carlos A. Ramos, Hato Rey, PR, for Puerto Rico Insurance Guaranty Assoc. (as to Pepsi and Bansander Leasing Corp. coverage only).

Carlos J. Morales Bauza, Rossello-Rentas & Rabell-Mendez, San Juan, PR, for Puerto Rico Insurance Guaranty Assoc., In the interest of Bansander Leasing.

Francisco J. Colon-Pagan, San Juan, PR, for Pepsi Cola of Puerto Rico Bottling Co., Cigna Ins. Co. of Puerto Rico Vehicle Equipment Leasing Inc., Bansander Leasing Corp., Puerto Rico Insurance Guaranty Assoc., In the interest of Juan Hernandez Nazario, Corporacion Insular De Seguros, Cooperativa Los Vasqueros.

Jose A. Miranda Daleccio, Jose R. Toledo Buscaglia, Miranda-Cardenas & Cordova, San Juan, PR, for Cooperativa Los Vaqueros (Excess of Policy Limits).

### ORDER IN THE MATTER OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, FOR NEW TRIAL

ACOSTA, Senior District Judge.

The Court has before it PEPSI defendants' (PEPSI) motion for judgment as a matter of law, or in the alternative, for new trial (**docket No. 312**), filed on April 22, 1997.[1]

For the reasons set forth below, the Court hereby DENIES PEPSI's requested relief in its entirety.

## I. BACKGROUND

The claims asserted in these consolidated proceedings stem from a motor vehicle collision that occurred on Highway No. 165, in the vicinity of Toa Baja, P.R., on September 18, 1992, as a result of which six persons, including four children, were killed.

According to the record, on the afternoon of September 18, 1992, YOLANDA RIVERA and her husband JULIO ELVIN RUIZ CINTRON picked up their minor children SHAKIRA and ELVIN from the house of her mother, MANUELA VAZQUEZ ORTIZ, as well as the three (3) minor children of DARMARIS ADORNO DAVILA and JOSE DAVID RIVERA, who were being cared for by MANUELA VAZQUEZ ORTIZ. All seven boarded a 1991 Toyota Tercel, driven by JULIO ELVIN RUIZ CINTRON. A short time later the Toyota collided head on with a tractor trailer truck hauling a Pepsi Cola container which was driven by JUAN HERNANDEZ ROSARIO, a member of the Cooperativa Los Vaqueros de Transporte y Car-

---

1. See also, Plaintiffs' Opposition (docket No. 33, filed on June 23, 1997) and Defendants' Reply... (docket No. 349, ordered filed on October, 17, 1997). Defendants' Motion for Oral Argument... (docket No. 350, filed on October 30, 1997) is DENIED.

ga. All individuals in the Toyota died except the minor SHAKIRA, who sustained serious injuries.

These consolidated proceedings include claims presented in Civil No. 93–2329, which was filed by the father, mother, and siblings of JULIO ELVIN RUIZ CINTRON; Civil No. 93–2331, filed by JOSE DAVID RIVERA and his wife, DARMARIS ADORNO DAVILA, claiming their own pain and suffering as well as that of their three (3) children killed in the accident; and Civil No. 93–2332, filed by MANUELA VAZQUEZ ORTIZ seeking relief for the deaths of her daughter, son-in-law and grandson as well as for the pain and suffering associated with the injuries sustained by her granddaughter SHAKIRA. SHAKIRA also claims for her own injuries, the loss of both parents and brother and the inherited claims of her deceased mother and brother.

Named defendants in these actions are the driver, JUAN HERNANDEZ ROSARIO, and all entities having an interest in the truck and/or container and their respective insurers, i.e., Pepsi Cola of Puerto Rico Bottling Company (PEPSI), CIGNA Insurance Company of Puerto Rico (CIGNA), Vehicle Equipment Leasing, Inc. (VELCO), Cooperativa Los Vaqueros de Transporte y Carga, Puerto Rico Insurance Guaranty Association and Bansander Leasing (collectively PEPSI or PEPSI defendants). Defendants were jointly represented at trial by lead counsel for PEPSI, CIGNA and VELCO.

The jury found JULIO ELVIN RUIZ CINTRON, the driver of the Toyota, 59% responsible and HERNANDEZ ROSARIO, the truck driver, 41% responsible for the accident, and awarded the RIVERA ADORNOS over $6,000,000.00, and SHAKIRA and her surviving family approximately $5.7 million in damages.

## II. *PEPSI'S MOTIONS*

PEPSI alleges that the jury verdict cannot stand for the following reasons. First, PEPSI alleges that plaintiffs failed to prove a breach of a duty or causation and that no evidence was produced to establish that the deceased victims realized that they were in imminent danger prior to the crash.

Second, PEPSI moves for a new trial asserting that the verdict was against the weight of the evidence and advances nineteen errors allegedly committed during trial.

Third, PEPSI moves to alter the judgment to reflect the relevant deductions in the claims due to the comparative negligence of the driver; to modify the compensatory awards of medication and medical treatment of DARMARIS ADORNO and JOSE D. RIVERA to comport with the trial evidence; and to reduce the award to SHAKIRA, DARMARIS and JOSE DAVID in accordance with the mandatory reductions of the Automobile Accident Social Protection Act, P.R. Laws Ann. tit. 9, §§ 2051–2065, Act No. 138 of June 26, 1968 (the Act).

Plaintiffs allege that PEPSI defaulted in its Motion for Judgment as a Matter of Law because they failed to move for a directed verdict at the close of all the evidence. Plaintiffs also allege that SHAKIRA's award cannot be reduced because defendants failed to produce any evidence establishing her receipt of benefits from the Automobile Accident Compensation Administration (AACA); that the award to SHAKIRA based on pain and suffering is subject only to one statutory reduction and that JOSE DAVID and DARMARIS's moral damages award cannot be reduced because PEPSI failed to show that either of them were eligible to receive benefits from AACA.

Finally, plaintiffs argue that the weight of the evidence supports the jury's finding on negligence and its award for pain and suffering.

## A. MOTION TO ALTER JUDGMENT

The issues raised in defendants' motion to alter judgment have been discussed and ruled upon by the Court in its Order Amending Judgment issued via separate order on this day.

## B. MOTION FOR JUDGMENT AS A MATTER OF LAW

Rule 50(b) of the Fed.R.Civ.P. provides that after the jury has returned a verdict, the Court may revisit a motion for judgment as a

matter of law submitted pursuant to Rule 50(a) made at the close of all the evidence. The party renewing a motion pursuant to Rule 50(b) "is required to have moved for judgment as a matter of law at the close of all the evidence." *Keisling v. SER–Jobs for Progress, Inc.,* 19 F.3d 755, 758 (1st Cir. 1994); *accord, Jusino v. Zayas,* 875 F.2d 986, 991 (1st Cir.1989).

"The purpose of the Rule 50(b) requirement is to alert the opposing party to the movant's claim of insufficiency before the case goes to the jury, so that his opponent may possibly cure any deficiency in his case should the motion have merit, and also so that the judge may rule on the adequacy of the evidence without impinging on the jury's fact-finding province." *Martínez Moll v. Levitt & Sons of P.R., Inc.,* 583 F.2d 565, 569 (1st Cir.1978). Accordingly, "[a] post trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion." *Robles Vázquez v. Tirado García,* 110 F.3d 204, 206 (1st Cir.1997) (quoting Fed.R.Civ.P. 50(b) advisory committee's note to 1991 amendment); *accord, Sánchez v. P.R. Oil Co.,* 37 F.3d 712, 723 (1st Cir.1994). Furthermore, the motion must include every claim upon which the party bases its request for judgment as a matter of law. Failure to do so is considered a "fatal omission." *Sánchez,* 37 F.3d at 723.

■ We agree with plaintiffs in that defendants defaulted in their motion for judgment as a matter of law because they failed to make a motion to that effect at the close of **all** the evidence.

PEPSI moved for directed verdict at the close of plaintiff's evidence but asserted only one basis for its request: that plaintiffs failed to prove causation or a breach of a legal duty to avoid the collision.[2]

On April 2, 1997, upon the conclusion of the testimony of engineer DAVID E. CINTRON, the attorneys approached the bench in a sidebar. During the sidebar conference, the Court denied defendants' petition to present the testimony of district attorney ROBERTS the next day, after which, upon returning to the well, the defense rested.[3] At no time did defendants renew their motion for judgment as a matter of law thereafter.

We find PEPSI's motion procedurally defective on the basis of inherited claims because it failed to raise the issue at the close of plaintiffs' evidence or at the conclusion of all the evidence. The motion therefore raises an argument that was never before presented to the Court in a motion for judgment as a matter of law. Likewise, PEPSI's motion for judgment on the issue of causation is foreclosed because PEPSI failed to renew it at the close of all the evidence. *Correa v. Hosp. San Francisco,* 69 F.3d 1184, 1189 (1st Cir.1995) (motion for judgment as a matter of law made at the close of all the evidence preserves for review only those grounds specified at the time and no others). Accordingly, PEPSI's motion for judgment as a matter of law is hereby **DENIED.**

## C. MOTION FOR NEW TRIAL

■ Rule 59 of the Fed. R. of Civ. P. permits a trial Court to order a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States". Fed. R.Civ.P. 59(a). The decision to grant a new trial lies within the discretion of the trial court. However, it is to be exercised parsimoniously, since "a jury's verdict on the facts should only be overturned in the most compelling of circumstances." *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors,* 850 F.2d 803 (1st Cir.) *cert. denied,* 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988). Thus, even if the trial court may have reached a verdict opposite to that of the jury, the court should not overturn a verdict which is based on the evidence presented at trial, *Velázquez v. Figueroa–Gómez,* 996 F.2d 425, 428 (1st Cir.) *cert. denied,* 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993) and may only do so if the verdict is against the demonstrable weight of the evidence or results in a

---

**2.** *See* Transcript of Eleventh Day of Trial (**docket No. 295,** filed on April 1, 1997) at 71–75.

**3.** *See* Transcript for Thirteenth Day of Trial (**docket No. 303,** filed on April 3, 1997) at 150–155.

blatant miscarriage of justice. *Sánchez,* 37 F.3d at 717.

In its motion for new trial PEPSI incorporates the arguments presented in its motion for judgment as a matter of law. Of the nineteen grounds of reversible errors it alleges were committed at trial, it substantiates only those related to conflicting jury instructions [4] and exclusion of evidence of cocaine which we shall discuss below.[5] Additionally, because of their legal significance,[6] although not discussed extensively within the context of PEPSI's motion for new trial, the Court will address the grounds concerning inherited claims and request for remittitur.

■ The other grounds set forth in the motion are recounted in general and conclusory terminology,[7] and are hereby **DENIED** for failure to include a discussion of the reasons in support thereof, state the grounds with particularity and cite the authorities upon which they rely. Rule 7(b)(1) Fed. R.Civ.P.; Local Rule 311(12). *See also, United States v. 64.88 Acres of Land,* 25 F.R.D. 88, 89–90 (1960) (discussing particularity requirements of Fed.R.Civ.P. 7(b)).

### (1) Conflicting Jury Instructions

PEPSI alleges that the Court's charge [8] to the jury presented conflicting instructions on the standard of care applicable to the actions of HERNANDEZ. It argues that the Court first imparted an instruction calling for a "high" degree of care (Instruction No. 29) [9] which is completely at odds with the "ordinary" or "reasonable" standard of care it charged in a second, allegedly "correct" instruction (Instruction No. 32) [10].

Plaintiffs contend that PEPSI waived its objection to the "high degree of care" instruction because it failed to object to it clearly and distinctly before the jury retired to deliberate.

■ Fed.R.Civ.P. 51 provides that "[n]o party may assign as error ... the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the ground of the objection." Thus, "objections to a trial judge's charge to the jury must be clear enough and explicit enough to tell the trial judge what the party wishes the trial judge to say in order to correct the alleged error." *Scarfo v. Cabletron Sys., Inc.,* 54 F.3d 931, 946 (1st Cir. 1995) (citing *Linn v. Andover Newton Theological Sch., Inc.,* 874 F.2d 1, 5 (1st Cir.1989)) (the court must be told precisely what the

**4.** *See* Defendants' Motion at 3, ¶ 1.

**5.** *See* Defendants' Motion at 3, ¶ 2.

**6.** *See* Defendants' Motion at 5, ¶¶ 10 and 18. The issue concerning inherited claims was addressed by defendants within the context of PEPSI's Rule 50 motion.

**7.** *See* Defendants' Motion at 4–5.

**8.** After extensive discussion in chambers with counsel, the Court assembled a set of instructions, a copy of which was provided to the jury upon its request after the charge. It appearing that the aforementioned set of instructions was not filed in the record, IT IS HEREBY ORDERED that the Clerk of the Court shall FILE the instruction packet utilized by the undersigned in imparting to the jury the law applicable to this case.

**9.**

**Instruction 29**
Even in those instances where a driver has the right of way, he has the duty to exercise a high degree of care, keep the vehicle under control and look to his surroundings with the purpose of avoiding a collision.

**10.**

**Instruction 32**
The general rule of law is that a driver can assume that vehicles driven in the opposite direction will observe the law of the road and will keep to their right and will remain on the right-hand side.
A driver is not required to anticipate that an approaching vehicle will suddenly swerve into his lane. However, this rule does not relieve a driver from using ordinary care to avoid an impending collision.
When a driver notices an oncoming vehicle in his own lane, the driver must exercise the care of a reasonably prudent person to avoid an accident. But the duty to swerve or take other measures to avoid the accident does not arise until it is obvious that the motorist who is driving in the wrong lane does not seem to have any intention of changing his direction. It is generally held that the motorist driving in the appropriate lane has not been negligent if he did everything that a reasonably careful person would have done to prevent a collision.

problem is and what the attorney would consider a satisfactory cure).

The record reflects that PEPSI timely objected to proposed instruction No. 29, identifying succinctly the terms of the objection and proposing a lawful alternative. *See* Transcript of Closing Arguments (April 3, 1997) at 93–94. Thus, we find that no waiver occurred.

■ Regarding the allegedly conflicting standards of care articulated in Instruction Nos. 29 and 32, the Court finds that no conflict ensued because the Court's charge as a whole did not force the jury to move in opposite directions in their deliberations.

Instruction No. 32 is based on a 1967 Puerto Rico Supreme Court case involving an accident in which a motor vehicle invaded the opposite lane and collided with defendant's vehicle travelling in the opposite direction, a situation similar to the case at bar. *See Ruiz Adames v. Ins. Co. of P.R.*, 95 P.R.R. 412 (1995). The *Ruiz Adames* Court refused to find defendant negligent because no evidence was presented to show that he had a "reasonable opportunity to swerve to avoid the accident". *Id.*, at 416. The Court's holding borrowed heavily from common law jurisprudence, adopting thereby the "sudden emergency rule" theory that had been generated through lower state court jurisprudence during the 1950's and 1960's. *See, e.g., Zenith Transp. Ltd. v. Bellingham Nat'l Bank*, 64 Wash.2d 967, 395 P.2d 498 (1964); *Redden v. Bynum*, 256 N.C. 351, 123 S.E.2d 734 (1962); *Horton v. Greyhound Corp.*, 241 S.C. 430, 128 S.E.2d 776 (1962); *Minear v. Engel*, 184 Kan. 383, 337 P.2d 693 (1959); *Lamarque v. Masse*, 76 R.I. 382, 71 A.2d 100 (1950).

Instruction No. 29, on the other hand, was based on *Vélez Rodríguez v. Amaro Cora*, 95 JTS 38, a more recent—1995—Puerto Rico Supreme Court case, which, while not involving a matching accident scenario, provided the Supreme Court with an opportunity to reiterate firmly established policy in the realm of Puerto Rico motor vehicle laws and

jurisprudence rather than the common law. *See Vélez Rodríguez* at 757. We chose to give both instructions because we found that they complemented each other. Consequently, the jury charge, in its entirety, fairly and accurately stated the current law of Puerto Rico as regards the operation of a motor vehicle.

Accordingly, we find that the instructions as a whole apprised the jury of the applicable law and that the Court's decision to give both instructions did not prejudice the PEPSI defendants. *Sullivan v. Nat'l Football League*, 34 F.3d 1091, 1107 (1st Cir.1994).

PEPSI's motion for new trial on the grounds of conflicting jury instructions is therefore **DENIED**.

### (2) Exclusion of Cocaine Evidence/*Daubert* Analysis

Defendants' linchpin argument is that the Court erred in excluding evidence of the Toyota driver's alleged ingestion of cocaine "shortly before the crash", because the evidence was critical to their position that the Toyota driver was totally or almost totally at fault. This is important, they say, because a relatively low assessment of fault of the actions of the PEPSI driver by the jury could have resulted in a low enough assignment of negligence to defendants to extinguish their liability under the theory of absorption. Before proceeding to a discussion of the diminished value of the absorption doctrine in our jurisdiction, the Court shall address defendants' manner of presenting their arguments on the alleged time the cocaine was purportedly ingested.

First of all, defendants commence this portion of their motion by attacking the Court's exclusion of evidence of cocaine ingestion [11] by JULIO RUIZ CINTRON. They incorporate in that premise the assumption that the ingestion of cocaine occurred **shortly before** the collision. This argument is disingenuous.[12] No one knows,

---

11. The Court excluded the autopsy/toxicology reports referring to cocaine as well as defendants' expert witness and his report.

12. Similarly misleading is defendants' statement that "[t]here is no dispute among members of the scientific community about whether or how to determine the amount of cocaine on the body, nor is there dispute that cocaine ingestion can

nor was any direct evidence produced to establish at which moment in time RUIZ CINTRON allegedly ingested the cocaine. There were no witnesses, no testimony, no circumstantial evidence to that effect, indeed, there was nothing in the record that could lead to a conclusion that the cocaine was ingested "shortly before the crash" occurred. Thus, when confronted with DR. O'DON-NELL's opinion that RUIZ CINTRON had "snorted at least 200mg of cocaine powder into his nose thirty (30) to sixty (60) minutes prior to the accident" the Court was charged with the duty of investigating the scientific validity of such a sweeping and drastic supposition.

■ Our decision to closely scrutinize the admissibility of this particular scientific evidence under Rule 702 of the Fed. R. of Evid. was mandated by the Supreme Court's holding in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which requires an inquiry be made into the soundness of the methodology utilized by the witness in reaching his opinion. *See also Cortés–Irizarry v. Corp. Insular De Seguros,* 111 F.3d 184 (1st Cir.1997).

■ A cursory reading of O'DONNELL's report revealed that he had been engaged by defendants to prove their theory that RUIZ CINTRON was impaired at the time of the accident, by utilizing the limited information they had available to that effect, namely, the results of the toxicology and autopsy reports. Because defendants needed to establish that such ingestion actually occurred **shortly** before the crash and they lacked any direct or circumstantial evidence to that effect, the testimony of a pharmacologist was crucial to their theory of such correlation.

However, we found the report wanting after reviewing O'DONNELL's proposed testimony to determine if the reasoning or methodology underlying it was "scientifical-ly" valid, or whether the doctor's reasoning could properly be applied to the facts in issue, *Daubert,* 509 U.S. at 592, 113 S.Ct. at 2796. We found that it had no scientific basis because it consisted of unreliable and improper extrapolations from the blood results contained in the toxicological report of RUIZ CINTRON's autopsy and was nothing more than improper speculation. After the Court painstakenly reviewed the various articles and publications submitted by the parties as part of the motions *in limine* on this issue and cited as references by the expert in his own report,[13] it found that the assumptions which O'DONNELL utilized to reach his opinion as to the **amount** of narcotics and the purported **time** of ingestion were unsound and untenable. The Court found, *inter alios,* that the expert's technique was untested, had not been subjected to peer review, and its acceptability controversial at best. *Id.,* at 591–95, 113 S.Ct. at 2795–98.

Contrary to defendants' argument, the issue before the Court was **not** the particular **amount** of cocaine in decedent's system at the time of the accident, nor whether cocaine **impairs**. The key question in the Court's analysis was RUIZ CINTRON's unfitness to drive. Therefore, the relevance of the toxicological results would be measured against their ability to show intoxication to such an extent that the driver was impaired or unfit to operate a vehicle.

All the scientific literature submitted to the Court on this issue unanimously concluded that unlike alcohol, a correlation between a particular amount of cocaine in the system and the degree of impairment produced has not been scientifically determined because the effects of this substance varies from one individual to another. Thus, from the scientific evidence reviewed by the Court it was concluded that even though it is generally

impair a user's driving ability" because defendants are well aware that those premises were not the object of the Court's *Daubert* inquiries; rather it was Dr. O'Donnell's dubious methodology which was the proper subject of the Court's evaluation.

**13.** The Court notes for the record that despite the fact that DR. O'DONNELL cited many of these publications in his report, defendants proffered no data or literature in support of his assumptions and/or conclusions until the Court ordered them to do so during the pretrial conference held on March 5, 1997. *See* Minutes and Order of Final Pretrial Conference Held on March 5, 1997.

accepted that cocaine causes impairment, the degree of impairment in an individual cannot be scientifically deduced from the amount found in his or her system because persons metabolize cocaine differently.

Defendants did not submit any scientific evidence to establish the validity of their expert's bald assertions as to the **time and amount** of cocaine ingestion and MR. RUIZ CINTRON's alleged impairment.

Faced with the uncontested scientific evidence regarding the uncertainty in determining degree of impairment due to ingestion, the Court granted plaintiffs' motions in limine to exclude Mr. O'DONNELL's testimony. Plaintiffs' request to exclude all references to the cocaine was also granted because the toxicology report of RUIZ CINTRON's autopsy, on its own, without expert testimony to explain to the jury its significance, if any, would be highly prejudicial. Moreover, being fully cognizant of the inflammatory connotations of cocaine use and its potentially negative effect on the jury, the Court was particularly cautious in weighing the probative value of the autopsy and toxicology reports. We chose to exclude them so as not to confuse or unfairly prejudice the jury in its fact-finding duty.

Lastly, PEPSI's argument that the Court should have held an evidentiary hearing if it was considering excluding O'DONNELL's testimony pursuant to *Daubert* is unjustified. Defendants were aware that the Court's determination as to the exclusion or admission of O'DONNELL's testimony would be based on *Daubert* principles because that was precisely plaintiffs' reasoning in their motion *in limine* filed on February 28, 1997. Further, plaintiffs raised these very grounds for exclusion during the Settlement Conference held on February 26, 1997. If defendants felt it necessary for the Court to hold a hearing on its *Daubert* inquiry, it should have been so requested. The Court is not required to hold one and newly engaged post-trial counsel cannot now be heard on this issue. *See United States v. Brien*, 59 F.3d 274 (1st Cir.1995); *see also, Hopkins v. Dow Corning*, 33 F.3d 1116, 1123 (9th Cir.1994). We thus

consider this argument as having been waived.

A final word about defendants' "absorption theory" as a total defense to negligence.

It is well known that Puerto Rico is a comparative negligence jurisdiction. The legislature of Puerto Rico clearly established it as such when in 1956 it added language to Article 1802 of the Puerto Rico Civil Code to specifically provide for recovery by the plaintiff under the comparative negligence theory and a reduction of any award in proportion to the percentage of negligence attributed to plaintiff, thus:

> A person who by an act or omission causes damage to another through fault of negligence shall be obliged to repair the damage so done. **Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.**

P.R. Laws Ann. tit. 31, § 5141 (1990) (emphasis added).

Under comparative negligence principles if plaintiff's own conduct is one of the adequate causes of his harm, then his award shall be reduced in proportion to the percentage of the harm he caused himself. If he is 100% responsible, he receives nothing. If, however, he is 75% responsible, then 25% of the award is his.

This express legislative mandate that Puerto Rico be governed by the principles of comparative negligence is what guides our decision today to reject defendants' premise that "a sufficiently low assignment of fault for defendants would have extinguished their liability under the doctrine of absorption of fault".[14]

Our rejection of the absorption theory's application in Puerto Rico is joined by others. For instance, in *Santiago v. Becton Dickinson & Co., S.A.*, 571 F.Supp. 904 (D.P.R.1983) the district court, after a detailed examination of the absorption theory as developed in civil law jurisdictions and its application in Puerto Rico, stressed that "[the] theory, limited in application to the intentional fault of the plaintiff, in no way

---

14. Defendant's Motion at 23 and 26.

erodes the established rule of comparative negligence" *Id.* at 912. Similarly, Puerto Rico tort law commentators and professors alike have criticized the decisions of the Supreme Court of Puerto Rico in *Cárdenas Maxán v. Rodríguez*, 125 D.P.R. 702 (1990) and *Toro Lugo v. Ortiz Martínez*, 113 D.P.R. 56 (1982), the cases on which defendants rely for the application of this theory, as "troublesome" and "contradictory",[15] and "needless *dictum*".[16] We find therefore, that the theory is simply not applicable to the facts before us, and even were it so, the primary source of law in this jurisdiction, the Civil Code, would mandate otherwise.

### (3) Inherited Claims

PEPSI defendants renew their argument that the record is devoid of evidence to support an award on the basis of the pain and suffering of the deceased, claims which were inherited by various plaintiffs.

 We disagree. It was reasonable from the evidence presented to the jury for it to infer that the seven passengers of the Toyota realized that they were about to collide head on with the tractor trailer truck. Given the time of day the collision occurred; the testimony of fact witnesses as to the period of time that elapsed from the time the Toyota allegedly began the passing maneuver to the approximate time of impact; the testimony of the passengers of the PEPSI truck about their own apprehension; and the extent of the injuries documented in the autopsy reports, it was clearly reasonable for the jury to infer that KELVIN, DAVID, and STEPHANIE RIVERA ADORNO, and ELVIN RUIZ and YOLANDA RIVERA experienced a realization of imminent death in the seconds prior to the collision, with the consequent distress and mental anguish that such an ordeal entails. *See, e.g., Pregeant v. Pan Am. World Airways, Inc.*, 762 F.2d 1245, 1250 (5th Cir.1985) (even in absence of direct evidence of conscious pain and suffering jury can reasonably infer that plaintiff experienced pain, no matter how fleeting).

### (4) Remittitur on Damages

 Defendants argue that the Court should grant a new trial on damages, or in the alternative, a remittitur, because the verdict was excessive, shocking, against the weight of the evidence and/or otherwise inconsistent with damages normally awarded by the courts of Puerto Rico for the death of a child. Because this argument was cursorily submitted without supporting authorities, the Court will not discuss it other than to convey our view that plaintiffs tendered a considerable amount of evidence establishing their moral pain and suffering. Furthermore, given the extensive testimony presented to the jury for its assessment of plaintiffs' damages, we do not find the size of the award "so shocking or monstrous as to require a reversal. We feel that under the circumstances of this case it is impossible to say that a reasonable man could not reach the same result." *Bridges v. Groendyke Transp., Inc.*, 553 F.2d 877 (5th Cir.1977).

### III. CONCLUSION

PEPSI's motion for judgment as a matter of law and its motion for new trial, **docket No. 312**,[17] are **DENIED.**

IT IS SO ORDERED.

---

**15.** *See* Alvarez González, José Julián, *Responsabilidad Extracon-tractual*, 62 Rev. Jur. U.P.R. 903 (1993), quoting Goldenberg, Isidoro H., *La Relación de Causalidad en la Responsabilidad Civil*, at 169–70 (1984) ("what we have here is a thesis which is currently in abandon, a splinter of the theory of *sine qua non*") (translation ours).

**16.** Irizarry Yunqué, Carlos J., *Responsabilidad Civil Extracon-tractual*, 2d ed. 399–403 (1996).

**17.** PEPSI's request for amendment of judgment has been granted in part and denied in part via separate order.